IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA R., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 19 C 4854 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff, Sylvia R.,[3] applied for Disability Insurance Benefits ("DIB") in August 2016, alleging a disability onset date of May 13, 2016, when she was 58 years old. (R. 167.) On October 3, 2018, an Administrative Law Judge ("ALJ") issued an opinion finding Plaintiff not disabled. The Appeals Council denied review (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021). Before the Court are Plaintiff's

---

[1] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On November 1, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 10.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

motion seeking remand of that decision (D.E. 12) and the Commissioner's cross-motion to affirm. (D.E. 21.)

## BACKGROUND

**I.    Administrative Record**

Plaintiff has a history of asthma. In February 2016, she presented to the emergency department ("ED") with a moderate, hacking cough and wheezing. (R. 309.) She was discharged the same day with prescriptions for albuterol, [4] ibuprofen, fluticasone, [5] Claritin [6] and azithromycin.[7] (R. 326.) Plaintiff returned to the ED with similar symptoms in May 2016 and was discharged with prescriptions for albuterol, fluticasone and ibuprofen. (R. 279-84.)

On August 8, Plaintiff presented to her primary care physician ("PCP"), Pamela Fennewald, M.D., with a chronic cough. (R. 406.) She was prescribed albuterol, azithromycin and Symbicort[8] for her cough and omeprazole[9] for acid reflux. (R. 407-09.) On August 23, Plaintiff told Dr. Fennewald that her cough had not improved and was keeping her up at night. (R. 418-19.)

---

[4] Albuterol is an oral inhaler used to prevent and treat difficulty breathing, wheezing, shortness of breath, coughing, and chest tightness by increasing air flow through the bronchial tubes. https://medlineplus.gov/druginfo/meds/a682145.html.

[5] Fluticasone is a nasal spray also used to relieve symptoms of rhinitis such as sneezing and runny or stuffy nose. https://medlineplus.gov/druginfo/meds/a695002.html.

[6] Claritin (or loratadine) is an antihistamine used to temporarily relieve allergic symptoms including sneezing, runny nose, and itchy eyes, nose, or throat. https://medlineplus.gov/druginfo/meds/a697038.html.

[7] Azithromycin is an oral antibiotic used to treat certain bacterial infections, such as bronchitis, pneumonia, and infections of the lungs and sinuses. https://medlineplus.gov/druginfo/meds/a697037.html.

[8] Symbicort is an oral inhaler used to help control the symptoms of asthma and improve lung function by preventing inflammation of the lungs and increasing air flow through bronchial tubes. https://www.mayoclinic.org/drugs-supplements/budesonide-and-formoterol-inhalation-route/description/drg-20068949.

[9] Omeprazole works by decreasing the amount of acid produced by the stomach. https://www.mayoclinic.org/drugs-supplements/omeprazole-oral-route/description/drg-20066836.

Dr. Fennewald observed Plaintiff coughing every time she took a deep breath; her chest x-ray was normal. (*Id.*) In September 2016, Plaintiff filled out a function report along with her application for DIB, writing that "every time I have coughing fits at a job, they are so severe, my job assignments are cut short." (R. 201.) She listed her most recent work as an administrative assistant from March to May 2016 and a mortgage processor from June to August 2015 and June to September 2013. (R. 211.) Plaintiff indicated that she could do light housework and shop, but it took her a long time to finish because she took frequent breaks due to coughing fits. (R. 201-04.)

On September 20, 2016, Plaintiff visited pulmonologist Semil B. Mehta, M.D. The nurse observed that Plaintiff threw up after she started coughing. (R. 422.) Dr. Mehta was unable to perform a pulmonary function test due to her coughing.[10] (R. 426.) He opined that Plaintiff's symptoms might be caused by mild asthma with air trapping, GERD (gastroesophageal reflux disease) with LPR (laryngopharyngeal reflux), and postnasal drip. (R. 431.) Dr. Mehta prescribed Hycodan[11] and prednisone[12] for symptom management, and Plaintiff was to continue Symbicort, albuterol, montelukast[13] and Nasacort.[14] (*Id.*)

---

[10] Dr. Mehta was unable to perform spirometry, an office test used to assess how well one's lungs work by measuring how much air is inhaled, how much is exhaled and how quickly air is exhaled. https://www.mayoclinic.org/tests-procedures/spirometry/about/pac-20385201.

[11] Hycodan is narcotic cough suppressant that combines hydrocodone and homatropine. It acts directly on the cough center in the brain to relieve cough. https://www.mayoclinic.org/drugs-supplements/hydrocodone-and-homatropine-oral-route/description/drg-20406079.

[12] Prednisone is a corticosteroid used to help relieve swelling, redness, itching, and allergic reactions. https://www.mayoclinic.org/drugs-supplements/prednisone-oral-route/description/drg-20075269.

[13] Montelukast is an oral medication used to prevent wheezing, difficulty breathing, chest tightness, and coughing caused by asthma. https://medlineplus.gov/druginfo/meds/a600014.html.

[14] Nasacort is a nasal spray used to treat an itchy or runny nose, sneezing, or other symptoms caused by allergic rhinitis. It is a steroid that works by preventing the inflammation that occurs with allergic reactions. https://www.mayoclinic.org/drugs-supplements/triamcinolone-nasal-route/description/drg-20061212.

On September 28, 2016, Plaintiff was admitted to the ED with respiratory distress, shortness of breath and chest pain with cough. (R. 370, 372.) Her persistent coughing limited deep inhalation but her lungs otherwise sounded clear. (R. 379.) Her cough appeared to be due to postnasal drip. (R. 385.) Imaging of Plaintiff's chest was normal and a CT scan of her sinuses showed mild mucosal thickening and small mucosal retention cysts "of unlikely clinical significance." (R. 352, 390, 443.) Plaintiff was discharged on September 30 with a diagnosis of bronchitis and prescriptions for amoxicillin (penicillin antibiotic) and nasal spray. (R. 387, 483-86.) On October 4, she returned to Dr. Mehta; on examination, she coughed so hard that she threw up. (R. 437-38.) Dr. Mehta was unable to perform spirometry. (R. 436.) Dr. Mehta again prescribed Nasacort for sinus congestion and post-nasal drip, omeprazole for GERD, and Hycodan for symptom management; he also prescribed Symbicort and albuterol but noted that was "empiric therapy: may not need if there is no obstructive lung disease." (R. 439.)

On October 5, 2016, Plaintiff presented to a state agency medical examiner, who noted she was coughing frequently due to "an acute exacerbation of her asthma due to bronchitis." (R. 500-02.). Plaintiff reported that she could bathe, dress and cook when not having a severe asthma attack, but she took frequent breaks from household chores due to coughing fits. (R. 500.) On October 25, a non-examining state agency doctor opined that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following environmental limitations: avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases and poor ventilation. (R. 72-75.) That opinion was affirmed on reconsideration on March 10, 2017. (R. 84-87.)

On October 18, 2016, Dr. Mehta observed that Plaintiff had severe coughing followed by long periods of no coughing during their conversation. (R. 537-40.) Plaintiff's lungs were clear on examination, and Dr. Mehta recommended she continue her current treatment. (*Id*.) On November

4

29, Plaintiff visited a gastroenterologist on Dr. Mehta's referral to address her GERD and chronic cough. (R. 545.) Testing revealed that Plaintiff had a sliding hiatal hernia,[15] with gastroesophageal and esophageal reflux, including difficulty swallowing. (R. 544, 549.)

On December 5, 2016, Plaintiff went to the ED with shortness of breath and a persistent cough. (R. 513.) Examination revealed wheezing and mild respiratory distress. (R. 514.) She was assessed with asthma exacerbation and a chest x-ray indicated possible pneumonia. (R. 516-517.) Plaintiff's condition improved, and she was discharged later that day with prescriptions for prednisone, azithromycin and Robitussin AC.[16] (R. 517, 521.)

On March 14, 2017, Plaintiff returned to Dr. Mehta; at one point, she coughed so hard that she threw up. (R. 644.) Dr. Mehta recommended she continue her current treatment and noted Plaintiff had possible vocal cord disfunction. (R. 642, 645.) Plaintiff returned to Dr. Mehta on October 23, 2017; the examination results mirrored those in March, including coughing so hard that she threw up. (R. 649-53.) She was again unable to complete a pulmonary function test because she was coughing too much. (R. 647.)

On October 23, 2017, Dr. Mehta filled out a Pulmonary Disorder Report. He listed Plaintiff's diagnoses as asthma, GERD, postnasal drip, hiatal hernia and chronic debilitating cough, and her symptoms were shortness of breath, episodic acute asthma, episodic acute bronchitis and very frequent coughing, even with prescribed treatment. (R. 564-65.) Dr. Mehta listed precipitating factors as allergens, emotional upset/stress, and irritants, and he opined that Plaintiff should "avoid all exposure" to extreme cold and heat, high humidity, cigarette smoke,

---

[15] In this type of hernia, the stomach intermittently slides up into the chest through a small opening in the diaphragm. https://www.hopkinsmedicine.org/health/conditions-and-diseases/hernias/hiatal-hernia.

[16] Robitussin AC is a combination of an expectorant (guaifenesin) and a narcotic (codeine) used to treat cough and to reduce chest congestion caused by upper respiratory infections or the common cold. https://www.uofmhealth.org/health-library/d03393a1.

5

solvents/cleaners, fumes, odors and gases; "avoid even moderate exposure" to perfumes; and "avoid concentrated exposure" to soldering fluxes, dust, chemicals and other irritants. (R. 566.) Dr. Mehta opined that during a workday, Plaintiff could stand for one hour at a time and four hours total and sit for more than two hours at a time and six hours total, but she would need to take frequent, unscheduled 20-minute breaks during the day due to her unremitting cough. (R. 565-66.) He further indicated that Plaintiff's condition impacted her concentration and attention and would cause her to be absent from work more than three times per month. (R. 565.)

On April 24, 2018, Plaintiff returned to Dr. Mehta, who again observed her coughing severely, although her lungs were clear on examination. (R. 659.) On June 17, Plaintiff went to the ED with an upper respiratory infection, shortness of breath, chest pain and cough. (R. 591.) She was treated with hydrocodone and acetaminophen, albuterol and prednisone and was discharged later that day. (R. 593-622). That year, Plaintiff also received grief counseling from her church minister after her son tragically died in a car accident. (R. 572, 581-82.)

## II. Evidentiary Hearing Before the ALJ

On June 29, 2018, Plaintiff testified at her hearing that she had not been able to hold a job for the past couple of years because her jobs ended after she had asthma attacks or coughing spells that took her out of work or caused her to have to go to the bathroom for five to 10 minutes at a time until she could get her breath back. (R. 35, 40.) Around the house, it took Plaintiff a long time to clean because she had to sit down to catch her breath for about 20 minutes after each coughing fit. (R. 44.) She also had "to be careful on the chemicals [she] use[d] when [she] clean[ed]" because cleaning products and chemical smells could irritate her. (R. 48-49.) Plaintiff testified that she also had sleep apnea but she does not use a CPAP machine because it wakes her up at night. (R. 43.)

6

The ALJ presented the vocational expert ("VE") with a hypothetical individual who could perform light or sedentary work; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and could have occasional exposure to extreme heat and cold, humidity, dust, gases, odors, fumes and pulmonary irritants. (R. 56.) The VE testified that the individual limited to light work could perform all Plaintiff's past work, and the individual limited to sedentary could perform her past job as a mortgage loan processor, case worker, or data entry clerk. (*Id.*) All past work would be precluded if the individual was limited to understanding, remembering, and carrying out simple and routine tasks and making simple, work-related decisions. (*Id.*) In addition, even if the job allowed her to be off-task 10 percent of the workday, if the individual had coughing fits that took her off task for five minutes or more each hour, all work would be precluded. (R. 57-58.)

### III. ALJ's Decision

On October 3, 2018, the ALJ issued a written opinion finding Plaintiff was not disabled from her alleged onset date of May 13, 2016, through the date of the opinion (R. 16.) The ALJ found Plaintiff had the severe impairments of asthma, obstructive sleep apnea, obesity[17] and hernia. (R. 17-18.) The ALJ determined that Plaintiff's hypertension and GERD were not severe because she had no symptoms from these impairments when she took her medication. (R. 18.) She also recognized Plaintiff was grieving the death of her son but found Plaintiff did not have a mental impairment. (R. 18, 21.) The ALJ concluded that Plaintiff's impairments alone or in combination did not meet or medically equal the severity of a listing and assigned Plaintiff an RFC to perform light work except she could "occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds," and she could "occasionally be exposed to extreme heat, extreme cold, humidity, dust, gases, odors, fumes, and pulmonary irritants." (R. 18.)

---

[17] Plaintiff's Body Mass Index ("BMI") was over 30. (R. 18.) The CDC defines a BMI of 30.0 or higher as falling within the obesity range. https://www.cdc.gov/obesity/adult/defining.html.

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects from the symptoms from her impairments were "not entirely consistent with the medical evidence and other evidence in the record." (R. 19.) The ALJ acknowledged evidence of Plaintiff's severe coughing, occasional wheezing, trips to the ED with shortness of breath, and an acute exacerbation of her asthma due to bronchitis at her state agency exam.[18] (R. 20.) However, the ALJ noted that diagnostic imaging of Plaintiff's chest was normal and she consistently had "normal physical lung examinations." (*Id.*) In addition, the ALJ found that Plaintiff "engaged in a somewhat normal level of daily activity" – specifically, bathing, dressing, cooking, shopping, sweeping and mopping -- which the ALJ determined was "not consistent" with Plaintiff's allegations of disabling functional limitations. (*Id.*)

Next, the ALJ gave "great weight" to the non-examining state agency opinions, finding them "consistent with and supported by the medical evidence of record," specifically, Plaintiff's ED visits and "normal physical lung examinations." (R. 21.) By contrast, the ALJ gave "little weight" to the RFC opinion of Dr. Mehta, whom the ALJ referred to as Plaintiff's "primary care provider." (*Id.*) The ALJ stated that his opinion was "inconsistent with and not supported by the medical evidence of record," including examinations showing clear lungs, "normal CTs," and "diagnostic imaging showing no cardiopulmonary process."[19] (*Id.*) Ultimately, based on the RFC, the ALJ found Plaintiff was capable of performing all of her past work. (R. 22.)

---

[18] The ALJ cited the numerical results of a pulmonary function test performed at the state agency exam, but neither the agency doctor nor the ALJ assigned meaning to the results. Thus, they tell the Court little because "[n]ormal values for [pulmonary function tests] vary from person to person. . . . [T]est results are compared to the average for someone of the same age, height, sex, and race," and "compared to any [] previous test results." https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/pulmonary-function-tests.

[19] The ALJ does not define "cardiopulmonary process," although the Court recognizes that "cardiopulmonary" refers to conditions related to the heart and lung.

ANALYSIS

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because, among other things, the ALJ erred in assessing her subjective symptoms, crafted an RFC that failed to account for all her limitations, and improperly rejected Dr. Mehta's RFC opinion. (D.E. 13: Pl.'s Mem. in Supp. of Summ. J. at 6.) For the following reasons, the Court agrees.

I.  **Legal Standard**

An ALJ's decision will be affirmed if it was supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. . . . [T]he threshold for such evidentiary sufficiency is not high." *Id.* In making this determination, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, -- F.4th --, 2022 WL 291721, at *3 (7th Cir. Feb. 1, 2022) (internal quotations omitted).

II. **The ALJ's Assessment of Dr. Mehta's RFC Opinion Was Not Supported by Substantial Evidence**

The ALJ gave little weight to Dr. Mehta's opinion on Plaintiff's RFC in the Pulmonary Disorder Report, instead assigning Plaintiff an RFC to perform light work limited to, among other things, "occasional[ ] expos[ure] to extreme heat, extreme cold, humidity, dust, gases, odors, fumes, and pulmonary irritants." (R. 18.) Section 404.1527(c) of the Social Security regulations provides that if an ALJ does not give a treating physician's opinion controlling weight, the ALJ

9

must consider the following factors in deciding what weight to give the physician's opinion: the length, nature, and extent of the treating relationship; the opinion's supporting explanation and consistency with other evidence; and any specialty of the physician. 20 C.F.R. § 404.1527(c).[20] Here, the ALJ's determination that Dr. Mehta's opinion was inconsistent with other evidence was not supported by substantial evidence, and the ALJ failed to consider any of the other required factors in assessing the weight to give Dr. Mehta's opinion on Plaintiff's limitations.

Defendant does not discuss the ALJ's failure to address the Section 404.1527(c) factors but argues that the ALJ provided sufficient "valid reasons" for discounting Dr. Mehta's opinion. (D.E. 22: Def.'s Mem. at 8.) Contrary to Defendant's argument, the ALJ offered only one rationale in rejecting Dr. Mehta's opinion: that it was "inconsistent with and not supported by the medical evidence of record," specifically examinations showing clear lungs, normal CTs, and "diagnostic imaging showing no cardiopulmonary process." (R. 21.) But that rationale was not supported by substantial evidence. Contrary to the ALJ's statement, abundant medical record evidence supported Dr. Mehta's RFC opinion, all of which the ALJ seems to have disregarded with her statement dismissing Dr. Mehta's opinion as inconsistent with and not supported by the medical record. "An ALJ is required to consider findings that support a treating doctor's opinion; failure to do so is error." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018). In this case, the ALJ's failure to consider findings supporting Dr. Mehta's opinion constituted the impermissible practice of "cherry-pick[ing] facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Notably, the ALJ ignored evidence within Dr. Mehta's own reports that was consistent with his opinion that Plaintiff needed to take frequent breaks during the day due to her frequent

---

[20] This section applies to claims filed before March 27, 2017, as this one was.

10

severe coughing and that she should "avoid all exposure" to multiple environmental irritants that might precipitate these coughing attacks. The ALJ stressed that Dr. Mehta's exams usually found Plaintiff's lungs to be clear but disregarded the fact that during those exams Plaintiff coughed so hard that Dr. Mehta could not complete a pulmonary function test, and frequently she coughed so hard during her examinations that she threw up. In addition, in focusing on the fact that Plaintiff's lungs were clear, the ALJ did not consider or discuss the uncontradicted medical evidence that Dr. Mehta continued to treat Plaintiff's unrelenting asthma and related symptoms with a variety of medications.[21] This was error. "[A]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence." *Mandrell v. Kijakazi*, -- F.4th --, 2022 WL 368567, at *4 (7th Cir. Feb. 8, 2022) (internal quotations omitted).

In addition, the ALJ failed to consider other evidence in the record that was consistent with Dr. Mehta's RFC opinion. For example, while the ALJ pointed to ED tests showing Plaintiff had clear lungs as inconsistent with Dr. Mehta's opinion, the ALJ did not consider or weigh the fact that Plaintiff was in the ED in the first place due to severe coughing, wheezing, shortness of breath, respiratory infections and/or bronchitis, the same evidence that formed the basis for Dr. Mehta's opinion. In addition, the ALJ did not even mention the evidence that Dr. Fennewald, Plaintiff's PCP, documented Plaintiff having similar symptoms, and the ALJ failed to consider or weigh the fact that the state agency examiner observed Plaintiff coughing frequently with "an acute exacerbation of her asthma due to bronchitis" despite tests showing clear lungs. (R. 500-02.) Although the ALJ listed some of this evidence elsewhere in the opinion, it is clear that the ALJ did

---

[21] At one point, Defendant contends that there is no "objective measure for plaintiff's impairment" because "[d]octors were unable to determine an etiology of [her] coughing fits." (Def.'s Mem. at 1.) But an ALJ may not reject a doctor's assessment and treatment of a claimant's symptoms simply because the symptoms have an "unclear cause." *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) (holding that it was error to reject a physician's assessment of the claimant's symptoms "merely because he could not isolate the source of the pain.")

11

not weigh this evidence at all in assessing Dr. Mehta's RFC opinion. Like the Seventh Circuit found in *Mandrell*, this Court finds that remand is necessary because the ALJ "did not adequately explain why [she] disregarded substantial portions of the medical testimony in the record," and the ALJ "did not adequately connect the dots between the RFC [she] found and the deficits that [she] also acknowledged." *Mandrell*, 2022 WL 368567, at *3. The ALJ opinion offers us, the reviewing court, no basis to understand why the ALJ did not weigh Plaintiff's symptoms observed and treatment administered under the care of Dr. Mehta, and, indeed, no basis to conclude that the ALJ even acknowledged the "deficits" that undermined the connection the ALJ found between the medical record and the ALJ-created RFC.

The other reasons Defendant claims the ALJ provided for rejecting Dr. Mehta's opinion (set forth below) are nowhere to be found in the ALJ's opinion. Our consideration of such reasons would violate the rule of *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194 (1947), which holds that "the ALJ's decision cannot be defended on a basis not articulated in her order." *Hardy*, 908 F.3d at 313. For example, Defendant contends that "the ALJ noted that Dr. Mehta's findings were belied by plaintiff's own admissions," as "Dr. Mehta found that plaintiff could have no exposure to cleaning products, yet plaintiff herself reported that she cleaned." (Def.'s Mem. at 9.) However, the ALJ never made any connection between Plaintiff's self-reported ability to clean and Dr. Mehta's restriction on her exposure to "solvents/cleaners." Indeed, Plaintiff herself testified that she was careful with chemicals she used when she cleaned because cleaning products and chemical smells could irritate her. (R. 48-49.) Defendant's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine." *Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021).

12

The ALJ's analysis of Dr. Mehta's opinion was also inadequate because the ALJ failed to consider the required Section 404.1527(c) factors, specifically, the length, nature, and extent of Dr. Mehta's treating relationship with Plaintiff and Dr. Mehta's specialty. The ALJ referred to Dr. Mehta as Plaintiff's "primary care provider," indicating that the ALJ did not consider the record fact that Dr. Mehta was not just a "primary care provider" (the PCP in fact was Dr. Fennewald), but was a pulmonologist, *i.e.*, a specialist in respiratory troubles, which the ALJ recognized as one of Plaintiff's severe impairments (namely, asthma). (R. 21.) Multiple aspects of the record here, including the gravity of Dr. Mehta's opinion (including that Plaintiff would need to take frequent, unscheduled 20-minute breaks during the day due to her unremitting cough), the fact that Dr. Mehta was a lung specialist, and that Dr. Mehta had an extensive treatment relationship with Plaintiff, called for consideration of the Section 404.1527(c) factors, but the ALJ opinion contains no such analysis and misstates the record evidence relevant to those factors. *See Reinaas*, 953 F.3d at 466 ("In light of [the doctor's] specialty and treatment relationship with [Plaintiff], the evidence to support the ALJ's determination is less than substantial.")

### III. The ALJ's RFC Determination Was Not Supported by Substantial Evidence

The ALJ assigned Plaintiff an RFC to perform light work limited to "occasional[] expos[ure] to extreme heat, extreme cold, humidity, dust, gases, odors, fumes, and pulmonary irritants." (R. 18.) "[A]n ALJ must include all of a claimant's limitations supported by the medical record" into the RFC. *Reynolds*, 2022 WL 291721, at *3 (internal citations and quotations omitted). Plaintiff argues that the ALJ's determination that she could "endure occasional exposure to environmental irritants of any kind" and the ALJ's failure to account for her need to take breaks

13

or otherwise be off task due to shortness of breath and coughing fits was not supported by substantial evidence. (Pl.'s Mem. at 12-13.) [22] The Court agrees.

Besides Dr. Mehta, the non-examining state agency physicians were the only doctors to give an opinion on Plaintiff's RFC. The ALJ gave "great weight" to these opinions, finding them "consistent with and supported by the medical evidence of record," specifically: Plaintiff's "emergency room visits for shortness of breath," the "pulmonary function test" given by the state agency examiner, and "normal physical lung examinations." (R. 21.) But as explained above, the ALJ improperly cherry-picked evidence of normal lung examinations from Dr. Mehta's and the ED record in a manner showing that the ALJ did not consider or weigh evidence that Plaintiff's symptoms of respiratory distress, shortness of breath, severe coughing and/or wheezing continued unabated despite tests showing her lungs were clear.[23]

In addition, the state agency examiner's pulmonary function test does not provide support for the ALJ's RFC determination because the agency doctor did not interpret or otherwise assign value to the numerical results of that test. The doctor did, however, observe that Plaintiff "cough[ed] frequently," "appear[ed] to be short of breath," and was "having an acute exacerbation

---

[22] Plaintiff also contends the ALJ erred by failing to include limitations in her mental functioning caused by grief or to provide an assessment of how obesity would affect her ability to work. (Pl.'s Mem. at 10-11, 15.) But it is Plaintiff's burden to "identify[] any objective evidence in the record corroborating" her alleged functional limitations, *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021), and she presented no evidence that her obesity or grief caused her any additional limitations, and Plaintiff's church counselor disclaimed any ability to opine on her mental limitations. (R. 581-82.)

[23] Defendant cites the ALJ's decision to credit the non-examining state agency opinions as a "valid reason" for rejecting Dr. Mehta's opinion. (Def.'s Mem. at 8-9.) However, the ALJ's decision to "rel[y] on the opinions of two non-examining state-retained physicians who did not have firsthand knowledge of how [Plaintiff's] symptoms could have worsened over time," *Reinaas*, 953 F.3d at 466, was not supported by substantial evidence because the ALJ's reasons for giving their opinions great weight ignored large portions of the record, as explained above. In addition, the Court notes that the first state agency opinion came out in October 2016, only one month after Dr. Mehta began treating Plaintiff, whereas Dr. Mehta wrote his opinion on Plaintiff's RFC in October 2017, after having treated Plaintiff for more than a year.

of her asthma due to bronchitis." (R. 500, 502.) Plaintiff's treating pulmonologist observed similar symptoms, but he was unable to test Plaintiff's lung capacity due to her unremitting cough which led to vomiting. "The ALJ did not adequately reconcile this evidence with [her] ultimate conclusion," and thus "failed to connect the residual functional capacity [s]he found with the evidence in the record." *Mandrell*, 2022 WL 368567, at *1, 4.

Defendant's attempts to rehabilitate the ALJ's opinion again run afoul of *Chenery*. Defendant contends that Plaintiff did not need the environmental restrictions in Dr. Mehta's opinion because "plaintiff herself admitted that her activities included cleaning." (Def.'s Mem. at 6-7.) However, as explained above, the ALJ never considered this rationale, and Defendant cannot offer it now in support of the ALJ's opinion. Defendant also argues that "there was nothing in the descriptions of the jobs provided at step four that would establish that plaintiff would have any exposure to extreme cold and heat, high humidity, or cigarette smoke" or "concentrated exposure to soldering fluxes, dusts, chemicals and other irritants." (Def.'s Mem. at 6-7.) This is pure speculation on Defendant's part. The ALJ only asked the VE to comment on jobs available for individuals who could have occasional exposure to extreme heat and cold, humidity, dust, gases, odors, fumes and pulmonary irritants. (R. 56.) And these limitations, which the ALJ put in the RFC she assigned to Plaintiff, were not supported by substantial evidence for the reasons discussed above.

### III. Credibility

The ALJ found Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms from her impairments "not entirely consistent with the medical evidence and other evidence in the record."[24] (R. 19.) The Court will overturn an ALJ's credibility determination

---

[24] Although this language is "common, but regrettably Delphic," the Court proceeds with the remainder of the ALJ's credibility analysis. *Mandrell*, 2022 WL 368567, at *2.

only if it is "patently wrong." *Wilder v. Kijakazi*, 22 F.4th 644, 647 (7th Cir. 2022). "But that demanding standard is met" where "the record lacks support for . . . the ALJ's main reasons for discrediting [a claimant's] testimony." *Fisher v. Berryhill*, 760 F. App'x 471, 477 (7th Cir. 2019).

Defendant claims that "the ALJ provided at least three valid reasons undermining plaintiff's allegations, [so] the ALJ's subjective evaluation was not patently wrong." (Def.'s Mem. at 3.) However, two of these reasons – "a lack of objective evidence supporting plaintiff's allegations" (specifically, exams showing clear lungs and normal respiratory functioning and normal medical imaging) and the fact that "[t]wo of three doctors found that plaintiff's allegations about coughing fits did not rise to the level alleged" (*Id*. at 2-3) – are a product of the ALJ's impermissible cherry-picking and decision to ignore evidence that was consistent with Plaintiff's description of her limitations from her impairments. As such, these reasons do not constitute substantial evidence in support of the ALJ's credibility determination.

The ALJ's third proffered reason for discounting Plaintiff's allegations – that she "engaged in a somewhat normal level of daily activity" that was "not consistent" with her allegations (R. 20) – fares little better. The ALJ cites Plaintiff's function reports and testimony that she was able to bathe, dress, cook, shop, and "do chores such as sweeping and mopping," despite her testimony about coughing spells and hospitalizations.[25] (*Id*.) However, the ALJ ignored the evidence that in Plaintiff's testimony and function reports, she consistently stated that her daily activities were limited due to her severe coughing fits because they caused her to take frequent, prolonged breaks in order to catch her breath. Because the ALJ ignored this evidence, Plaintiff's daily activities do not provide substantial evidence for the ALJ's decision to discount Plaintiff's allegations. "ALJs

---

[25] Here, again, Defendant violates the *Chenery* doctrine by offering reasoning not used by the ALJ: Plaintiff's testimony that her activities included cleaning, despite her claim that her coughing fits were exacerbated by exposure to chemicals. (Def.'s Mem. at 3-4.)

need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling. . . . [T]he problem is not that the ALJ weighed the evidence in a certain way; it is that she cited only evidence favorable to her decision without discussing any contrary evidence." *Reinaas*, 953 F.3d at 467 (holding that the ALJ's credibility decision was patently wrong where the ALJ ignored the claimant's testimony about the pain and fatigue his daily activities caused him and his limitations with them). *See also Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (holding that the ALJ's decision to discredit the claimant was unsupported by the record because the ALJ's examples of the claimant's daily activities "do not remotely describe a 'very active' lifestyle").

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand (D.E. 12) and denies the Commissioner's motion to affirm (D.E. 21).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: February 23, 2022**